4-1572, Dalarm Publishing versus ITC. 4-1572, Dalarm Publishing versus ITC. May it please the Court, Peter Branford, Dalarm. The Court should reverse the ITC's decision on multiple grounds. Dalarm did not violate a consent order by importing non-infringing parts to manufacture its in-reach devices in Maine, where the imported parts did not induce anyone to do anything, much less infringe the invalid claims of the 380 patent. We start with the language of the consent order. Importing non-infringing plastics, primarily a belt clip, did not infringe the consent order that banned importation of infringing components. That which was infringed, allegedly infringing, was not imported. That which was imported did not infringe. Dalarm, furthermore, did not and could not violate the consent order by infringing invalid claims. Furthermore, the mandatory... When do you start on that last point? Because at the time the enforcement proceedings began, the claims had not been adjudicated to be invalid, is that correct? That is correct. We had a pending motion for a summary judgment of invalidity in the district court, which we're going to talk about in a few minutes. So the ITC was considering an enforcement proceeding pursuant to the consent order for claims that had not been adjudicated to be invalid. As of that time. We think that the result of this case is controlled by the E-plus decision from this court, where the fact that you have a subsequent development, that is, the invalidation of a patent, will trump in the context of a non-final decision. Obviously, the ITC decision is not final. Why didn't you go back to the ITC and try to amend the consent order in view of the trial court decision? Well, we did not think that it was necessary, either under the consent order or under the rules of this court. The ITC regulations provide for that type of procedure, correct? But it certainly could not be exclusive. That is, we expected and we certainly anticipated that under the consent order, which said that it would not apply to any claim that was determined to be invalid, provided that this is the final... But wouldn't the appropriate form be the ITC to go back and say, we have a consent order. It contains this particular language. We think there's been an intervening event that invokes that language, and therefore ask the ITC to amend the consent order. Well, as judged from the fact that their position on appeal is we don't know what position we're going to take. We know under the E-plus decision that if this court determines that this patent is invalid, you cannot infringe an invalid claim, and therefore this court is a pure legal matter to determine that. We don't really know that, and in particular, at least, I don't know that after about 17 readings of the Supreme Court's colonial decision. We do know that you can't violate 1337 without infringing a valid patent. So I don't think you need to get into a, at least to my mind, quite interesting question of where the language about infringing, whether you can infringe invalid patents stands in the judicial world after Columbia. Well, the thing is that this is a legal determination, and it is a pure legal issue that is presented to this court. It's the same way that this court vacated the civil contempt ruling in the E-plus case. I guess the one problem I have with that is this isn't a civil contempt proceeding. This is a civil fine pursuant to statute, and even though it does carry the word civil in front of it, what our case in E-plus explained was civil contempt would be vacated, but criminal contempt would not. And what the Supreme Court said in the United Mine Workers, the 1947 case which our E-plus decision was premised on, is that the reason for that is because civil contempt is entirely compensatory and remedial, and that the other side shouldn't benefit with a big reward when, in fact, you had done nothing wrong. And what they said with criminal contempt is it's punitive, and it's all about you don't have the right to violate the court order, and that if it's punitive because you don't have the right to violate the court order, it should remain in place. So tell me which of those two scenarios the civil fine articulated in the statute falls into, because one of them doesn't get vacated, namely if it was meant to be punitive, it doesn't. One of them does get vacated, namely if it was meant to be compensatory and a windfall would be received, it does. It's certainly a civil, this is a civil case, number one, it's not criminal, it's a civil penalty, and so it's an even stronger case in our judgment than the E-plus because it's not in contempt. The allegation there is that we were violating this consent order by importing these non-infringing components, but it has to infringe. There has to be infringement. And so without that necessary building block, there can be no civil contempt. Okay, but I don't think it has to infringe. Let's assume, let's just assume for purposes of our discussion that I am okay with the entire $6 million judgment, that I don't agree with you on your arguments about induced infringement. Just assume that, okay? I want to focus on finality. That's what I'm trying to focus on. I'm trying to assume away a lot of your arguments, which believe me, I understand them, so don't think I don't. I understand them. I'm trying to assume those away, and I'm trying to get to the point where I'm trying to figure out if they were right to fine you $6 million and there wasn't a problem with that, all the other stuff. If they were right to fine you $6 million, does that fine disappear by virtue of a later invalidation in the district court of the claim upon which, the patent claim? Absolutely, and we've submitted dozens for a number of reasons. First, coming back to Commel, the majority of the dissent said you cannot infringe an invalid patent. Well, this isn't about infringement. This is about you violating the consent order. But the consent order says that we will not import this, this, and this, that infringe. And if you strip away patent infringement, there's nothing left. Let me just say, my problem with that argument about the coverage of this paragraph of the consent order on the assumption that there had never been a judicial invalidation is that it cannot be the case that validity is going to be litigated in enforcing this provision when you're accused of violating the provision because you gave up validity in the ITC. Well, we gave up litigating validity in the ITC, but with regard to the consent order, the language of the consent order says that it will apply until invalidation or unenforceability. That's a different argument from the argument that I think you keep making about how there's no infringement. That is a slightly separate argument. I agree that that's a separate argument. So it seems to me that the consent order language, both this paragraph and the later language, is about as close to perfectly ambiguous about the prospective versus retrospective effect as language can be. That is, the effect of an invalidity judgment in another proceeding. And it perfectly clearly contemplates that you can go to a court and get an invalidity judgment, but it seems to me just as clear that it's not clear about what the effect of that is going to be, whether it's going forward or retrospective. So how do we figure out what the best reading of this consent order is? Well, let me just tick off a few possibilities, which I think are—the ITC proceeding is not final. Once the district court thing is final, that should trump, that is, under that E-plus decision. Furthermore, the jurisdiction of the ITC is limited to unfair acts, which have to involve an importation of something that infringes a patent. Right. So I thought that that was an interesting argument in your letter that says the only reason they get to apply penalties at all to consent orders is that they persuaded this court in the San Juan case that consent orders were to be treated just like cease and desist orders under 1337F2, which is for civil penalties for violating 1337F1, which in turn incorporates 1337A, which then incorporates the infringe of a valid patent. And then you couple that—I think you also make this argument—with the regulation that says the consent order is basically always supposed to be the same consent order. Correct. Absolutely. Yes. And— They haven't—the ITC has not commented on that multi-step— They were asked to take a position and obviously chose to duck it to say just send it back to us. We don't think that's necessary. And indeed, the consent order itself, just to add a further gloss to the point I was making a moment ago, which is in paragraph 4 of the consent order, it says, It doesn't make sense. It says final and non-reviewable. It's not even non-reviewable after we're done with it. Even if we agreed with you on invalidity, it's still reviewable. They could appeal to the Supreme Court. So this paragraph that you keep citing doesn't actually apply even as of right now as we sit here. Well, except that— Because it continues to be reviewable. Well, it certainly—they certainly could try and take it up to the Supremes, but it's not—and so that's— But surely does not apply doesn't mean retroactively or prospectively. It doesn't define that, does it? Well, that's the only way to really understand it because consider the alternative, which is, well, it will only—the invalidation will only matter once it actually occurs. And so you can't do anything until it's invalidated somewhere, and as we know from the other case, the district court's jurisdiction is being challenged. So what the message is to Delore once they sign this consent order, which is, oh, well, you can be tagged even if it's invalid, ultimately found to be invalid. That's because you've given that type of judgment retroactive effect. Well, no. The thing is—my point I was going to make is that— I mean, I don't think E-plus stood for that. You keep citing E-plus. I don't think it stood for the fact that a district court judgment has retroactive effect. It's that it's still pending, and therefore—you know, that was a contempt thing, which is a good deal more serious in that— What I was trying to—the point, just so I don't lose this point here that I wanted to make, which is there is nothing that Delore could do other than just put itself out of business. Under the theory of that, well, you can just go ahead and be charged with this thing, but it doesn't matter if somewhere down the line the patent is invalid. What the message would be is, oh, well, you should go and invalidate the patent and then start your business again. Because otherwise, under this theory that you could—you've signed a contract, and it's supposed to be interpreted according to the plain language of the contract, and it was one that we proposed, the thought that we would propose something that says it would still be valid, would still apply to us, even if the patent is invalid and applied— Well, maybe it doesn't apply to you going forward. If you put the company out of business— Answer my question. Maybe it doesn't apply to you going forward, but these infringing acts, or rather the violations of the consent order, had occurred prior to the district court decision. The actions of selling these products did occur before the district court decision, but that decision and the result of that coming from the ITC was not known until the ITC ruled, but more importantly until we get through to the end of this appeal. If the answer at the end of the day is it's unclear whether or not that invalidating this patent means that we really don't have—we can't be sure whether or not that kills this story all together, then we should come back to the rest of my arguments, because I think it doesn't make any sense. You are eating up your rebuttal time. And I will save the rest of it. I will take that as a hint. Very good. Let's hear from counsel for ITC. Is it—tell me how to say your name. Gerdyne. Gerdyne? Yes. Okay, Mr. Gerdyne, please proceed. Good morning. I'm here to please the court. I think I'll go ahead with your assumption about assuming, you know, not prejudging the next appeal, assuming affirmance and everything. I think the court should focus on pretty much the common ground we have with the appellants here. I think we both agree that the contract language of the consent order should control here, and also that looking at it prospectively, that there could be no further violation if there's an affirmance of the invalidity judgment and it goes to nonreviewable stage. And also that certainly the invalidity judgment— Well, certainly it's a contract based on its terms. I think the decree—it's different from a decree or an injunction. I'm going to go there with a B plus that usually with a decree there's been some adjudication of significant issues, i.e., infringement or invalidity. There's been no adjudication here as expressed terms. I think it's paragraph 6 that it's for settlement purposes only. And, again, this case is not really equivalent to E plus as paragraph 2 by its expressed terms. In E plus it requires a non-final injunction, injunction that could be challenged. This consent order cannot be challenged in that way. I guess one of the issues also I had with the application of E plus, which I was hoping maybe you would explore with me, is what is—and I've spent a bit of time on this statute, the $100,000 per day penalty possibility. It used to be $10,000 a day. I'm sure you know that. It didn't used to be $100,000. And you didn't know. Okay, that's fine. But I went through the legislative history of it as well, which I'm guessing if you didn't know it used to be $10,000 you also probably aren't prepared to talk to me about. But—and it just seems everything about that fine is meant to be a punitive sanction for violating the consent order. That's what I gather from the legislative history. That's what I gather from the language of the statute itself and the ITC regulations. And I was hoping maybe you'd tell me what the ITC's position is on what is the underlying purpose of that statutory section and its implementation. Is it remedial or is it punitive and why? Well, I think certainly going towards past violations occurring for the consent order, I can't really speak affirmatively as to what the commission would decide on what their view of the penalty is tied up in validity. But, again, there's been two cases, Ninestar and San Juan, that have approved the six factors that we go through determining violations of our consent orders, the cease and desist orders. We go through the good or bad faith. We go through the benefit to Delorme in this case. We go through the ability to pay by Delorme, the injury to the patentee. None of the—okay, so let me try and help you. None of those seem to be taking into account the need to compensate the patentee, for example, right? None of those factors. Well, we look at the injury to the complainant, yes. We do look at that. Oh, yes, but he doesn't get the money. The government keeps the fine. Right, so this isn't compensatory. The civil fine at issue is not a compensatory fine, correct? Again, I really can't put labels on what kind of fine this is. Is it meant to compensate somebody? Again, we look at these six factors, but I wouldn't want to put labels on it without it being— stands for the proposition that if it is a compensatory or remedial award, then it can be vacated. If it is punitive in nature, it should be affirmed, even though the patent is later invalidated. That's the difference between civil and criminal contempt, according to the Supreme Court. So what I have now is a civil fine pursuant to a statute, right? So even though it has the word civil in it, I'm not sure that label means it has to be vacated, like Mr. Brand is arguing. I think I'm supposed to look at the underlying nature of that fine and ascertain whether it was meant to be the type of thing that ought to be vacated based on a subsequent case or whether it ought to be affirmed. You know, the glory of the ITC's order needs to be followed, darn it, and we're going to punish those who don't. So I'm trying to understand what is the nature of the civil fine at issue so I can figure out which bucket it goes in, because if it goes in the civil contempt bucket, it goes away. If it goes in the criminal contempt bucket, it doesn't go away. I understand your dilemma. Again, I would answer two reasons. One, again, we strongly disagree that E-plus is really relevant to this issue. Why? E-plus dealt with a special situation with a multi-step process of the injunction had to be non-final, and then once you can vacate the injunction, then you can look at the civil contempt penalties. Here we don't have – the consent order is not equivalent to an injunction. There's been no admission or finding of wrongdoing. Again, by its express terms, it's for settlement purposes only, and by its express terms, it's final as issued. There is no challenge to the consent order itself. That cannot be challenged as agreed to by the appellant here. So that's different from – that's two different reasons why it's different from E-plus. And again, secondly, I think all this discussion about what happens, whether it's civil contempt, whether it's compensation, whether it's punitive, I think it goes toward the scenario of it's kind of, I guess, heads we both win, tails we both win. This should go back to the Commission under statute, APA, under case law, SKF, other cases going towards – has to be exhaustion of administrative remedies, and also towards, again, the terms exactly of the consent order, paragraph 7. But based on what you're saying, why wouldn't we just affirm your $6 million judgment? Why are you even asking us to vacate and remand? What reason is there? They have not asked for modification of the underlying consent order. They filed no motion, and they've asked for no modification in this court, nor before the ITC. So why in the world aren't you standing there arguing, affirm the $6 million? They violated a consent order. It was final. They can't challenge it. Why are you arguing to me vacate and remand? Well, certainly we're not going to stand in the court's way if they want to – if you want to affirm this, but – You obviously don't think I should. You didn't argue to me to affirm it. You argued to me that you thought I should vacate and remand it, and I'm trying to understand why. What is it that you think needs to be reconsidered by the ITC? Right. You said in our brief there's issues that have – I think we both agree there's issues that have been triggered by this invalidity judgment. And again, assuming it goes towards non-reviewable status, there are certain issues that need to be first considered properly by the ITC with input from all relevant parties, Delorme, Briartec, and the commission investigative attorney, to go towards what does Paragraph 1 exactly mean, what does Paragraph 4 exactly mean. You're not saying that our only recourse here is to vacate and remand it.  I mean, so what issue is it that you think we should look at that the ITC should – I'm sorry, we should look at it. What issues are you talking about that we should send the case back so that the ITC can review? Look, I think certainly if the court has a question about whether they can affirm in the face of the invalidity, again, if it's assumed to be found finally invalid, there are issues here, again, with Paragraph 1, language of until the invalidation that has to be given some meaning. Again, Paragraph 4, whether it looks respectably or not. And again, Paragraph 5 as well about the challenge and inability was that applied here as well. I agree with what you're saying, that those issues perhaps belong back at the ITC, but there's a greater overarching issue here, isn't there? I mean, just whether this is subject to review at all. I mean, we have a consent order. What is it about the district court judgment that invalidates that consent order? Again, you're asking for a final determination. The Commission of the Society really can't give you that without, again, following administrative process with review. Can you talk a little bit about the chain of statutory steps that I asked your opposite number about? Namely, the only reason that you get to apply the civil penalty provision 1337F2 to this kind of order, a consent order, is that we held that you're urging in the San Juan case that the consent order should be treated as if, for these purposes, it's a cease and desist order or other order under 1337F1. And F1 implicitly, by reference to A, requires that there be infringement of a valid act. And therefore, you cannot apply a penalty to something other than infringement of a valid patent. And this consent order, whose language leaves much to be desired to determine on its own within its four corners what it means, should be interpreted to implement the background statutory authority under which this is all taking place. Why is that not? What's wrong with that chain of reasoning to say this consent order cannot be enforced through a penalty once the patent is invalid? Yeah, I believe the appellant needs to be conflating different issues together. Again, certainly from the case of San Juan and Nine Star, you can treat a consent order as a cease and desist order in terms of this is a commission order issued and we can issue civil penalties for your violation of it. However, the similarities basically end there as Section 337 obviously is a statute that goes towards prospective relief. And of course, when a patent is found invalid, you can no longer have any prospective relief, so then we would vacate the exclusion order in that case. However, based on this recent case law of UPI decided by this court, where you mentioned civically, Cayucera, a violation of Section 337 case, does not prohibit the commission from enforcing the consent order in accordance with its terms. So we have to go to the terms of the consent order here. So that's outside of the Section 337 box. We have to go to the consent order terms. That's what's controlled here. I think that's in agreement with the appellant to some extent. Right, but the premise of all of this is that we can't tell the answer from the consent order terms. So we are looking for ways to figure out what the answer should be because we can't figure it out from the terms. It doesn't do any good to refer to the terms if, by assumption now, the terms are ambiguous on this. I understand. I think that's even more reason to go back to the commission. To do what? Right, to have the proper first jurisdiction for deciding. What questions will the commission address? Right. And it can't only be entertaining a motion to modify. That can't be the end of the matter. The first question is whether the enforcement unmodified of this consent order through the civil penalty must fall without regard to modification of the consent order. That's a separate question for modification. Right. Again, you're asking a question that just arose on appeal and I can't give you the commission answer. The commission acts in response to briefing from the party and then comes to a final determination in accordance with the APA and our rules. I can just say, again, if the court has a question about it, that's even more argument to go back to the commission for the proper first consideration with all relevant parties there. With all the briefing and arguments, we come to a final appealable determination. The appellate can come back here if they don't like that first determination. Your opponent seems to rely quite a bit on E-plus to base his arguments. Do you think E-plus is distinguishable in this case? Yes, certainly. As I mentioned before, E-plus relies on this two-step process of first there's an injunction that's reviewable, not final, and then you can get to the underlying content penalties. Here we don't have an injunction. We have no admission, no finding of wrongdoing. Again, pursuant to paragraph six, it's just for settlement purposes only, this consent order. So we don't have no sense of admission of wrongdoing or finding wrongdoing. And also by paragraph two, it's final as issued a consent order. There's no challenge to a consent order. The only differences are in E-plus that in that case we were dealing with a district court judgment. And excuse me, in E-plus we're dealing with a PTO decision, whereas here we're dealing with a district court judgment. Right, that's also a difference. Again, I think it goes more towards the core of A, a consent order is not equivalent to an injunction or consent decree. And B, these cases cited by appellant are all original action cases. These aren't consent order cases. I think we are the ones who cite relevant consent order cases that the court can look at, Ham Street or Flexfoot or Shell Oil that might give the court more guidance on what to do. Isn't contract interpretation a question of law? Well, it's both a question of fact and law. What is the fact? I mean the terms of the consent order. How to construe terms of consent order you believe is a question of fact? No, no, I'm saying you go towards the fact of what does the language say and then you also go to the… I don't understand that answer. Is interpretation of language of a consent order a question of law or a question of fact? Yes, it is a question of law. So if interpreting the consent order is a question of law, and we have a consent order that speaks about what shall happen in the event of future invalidation, though it may not speak clearly, it does speak to it, what would be the point of sending it back to the ITC? Do we need the ITC's interpretation of statutes before we're allowed to interpret them? Again, I think all these questions make it a perfect scenario to go back to the commission. There's been a triggering of unusual circumstances here, obviously. Unusual circumstances that were anticipated by the consent order. It speaks to what ought to happen in the case of invalidation of patents, does it not? Right, but it's a further unusual circumstance that this all occurred on appeal. This did not occur before the commission. So the proper course would be if there's serious questions that have arisen during the course of the appeal, again, following APA, following the case law, find the terms of the consent order. Again, as we pointed in our briefing, we do have prior history of modification, also includes modification of both the consent order and associated penalties, perhaps, again, depending on the arguments that are made and how the commission finally determines. What is your position, since this is a question of law and the ITC drafted the consent order, what is the ITC position on what shall happen if a patent, which is the subject of the consent order, is invalidated? Again, we can all agree it has no prospective impact. Okay, so you agree it has no prospective impact. Correct. And so what is your position on what the terms of the consent order mean with regard to retrospective impact? Again, it's a decision that the commission has to make. Didn't the commission make it? I mean, they wrote the consent order. The consent order says, among other things, that it shall be upon, in a force, and prevent importation, yada, yada, yada, of the 380 patent after April 1st, 2013 until the expiration, invalidation, or unenforceability of the 380 patent. So it actually says this consent order applies after April 1st and until a patent is invalidated. So isn't your position that the consent order applies at least until the patent is invalidated? Yeah, we do think that is an issue. That's why we count. That's an issue or that, yes, the consent order applies until the patent is invalidated. Again, that's what the language appears to read. Again, I can't give you a final determination of the commission without going through the process, but I think that is enough to count. What process? I'm reading the language of the consent order. What process do they need to go? I don't understand why you're so hamstrung. You're here defending an ITC consent order drafted by the ITC, and you're not allowed to tell me that it means what it says when I read it? Again, the commission has a process. We go through a briefing process. We get to a final determination. Again, this is an unusual circumstance where this came up on appeal. The appellant did not come back to us, again, as they agreed to under Paragraph 7. Has a scenario like this arisen before in the commission? This doesn't strike me as that unusual. That is, a consent order where validity is not being litigated anymore. There's an agreement. We won't do certain things. Validity, as I guess the regulations quite clearly contemplate, can be litigated elsewhere. Sometimes it is litigated elsewhere. Is there a history within the commission of whether the commission views what must be reasonably standard language as either wiping out the past, what would otherwise be violations, or merely terminating the obligation to follow the terms of the order from that day forward? Again, we gave you the closest scenario in our briefing regarding the UPI case that cites to Investigation No. 698, the DC DC Controllers case. Remind me what happened in that one. Well, again, this is not an exact scenario. Language is different. It didn't have this until the expiration of validation or unenforceability language. Also, it happened before the commission, not after the commission decision, while it was on appeal. In that case, I've been bound a little bit by privilege, but I can just tell you that in response to the respondents making us aware of a final PTO cancellation of the claims, we vacated the portions of the initial determination with respect to that patent as moved. Can you correct me on something factual? I said out loud that you all drafted this. That's not true, right? Isn't it true that DeLorme drafted the consent order in its entirety? That's correct. They proposed and drafted the consent order. I'm sorry, but then it was modified. You didn't accept their initial proposal, right? Right. That was going towards a language of – they had amended the language of system components thereof. Everything else was unchanged, is that right? I think, yeah, approximately. I think there might have been some will nots to shall nots changed. I guess I'm just wondering to what extent this is or is not standard language that would be adopted by the ITC in consent order circumstances, or do you have any sense of whether or not this language is sort of consistent in general with the language that usually gets employed in these things? You're talking about the language of Paragraph 1? Paragraph 1 or Paragraph 4. Yes, how about Paragraph 1? Again, there's some differences. In the past, this has been drafted without this until language, which, again, I think is the reason why it should be remanded for this first impression. Drafted without the which language? The until – the language after 2013, Paragraph 1. Maybe one of the principles that, if this goes back to the commission, the commission might need to think about is the traditional principle of contract law that says all other things being equal, construe it against the drafter. Now, it may be that DeLorme proposed the thing, but DeLorme had essentially no choice about what to put in it because the regulation says consent orders may do nothing more than the following enumerated 11 things. Are you reading the old rules or the new rules? This was drafted before the new rules took effect. And was there no regulation at that point about what had to be in it? There were no specific regulations regarding the content of the consent order, just some portions of the consent order stipulation. There was no specific rules regarding the content of the consent order. There was no null and void language, particularly as they point out in their brief. But was there an enumeration? This is 2010-21-something-4, C-4, B-4? B-4, it looks like. C-4. It says, content of the consent order, the commission will not issue consent orders with terms beyond those provided for in this section and will not issue consent orders that are inconsistent with this section. Consent order shall contain, and now there are 11 in there. It's all new language, actually. All new language. All new language from the newly promulgated rules after the April 5th date. And just to be clear, I don't go back and discover that the language has changed, but in substance it's about 98% the same. Was there a provision like this about the contents of consent order before this regulation? Well, there was a provision regarding the content of the consent order stipulation. There's a motion for consent order stipulation, which is granted subsequently, and then a consent order is issued. So it's motion by consent order stipulation. But there was nothing that articulated specific provisions that can or cannot be included in the consent order, correct? Correct. That's all new language promulgated rules after April 5th. Okay, thank you. Mr. Brand, two minutes of rebuttal. Thank you, Your Honor. To go to the last point first, it's the way these things always go, right, is that Delorme did submit the consent order. It was based, however, on the rules, and we do differ, and we cite both the old rules and the new rules, and would leave to the court in its judgment afterwards the extent to which they dictated exactly what we put into it. But the rules themselves make it clear that you aren't going to interpret this thing beyond the context of what, beyond the jurisdiction of the ITC itself. There's no need to send this back to the ITC to decide a pure issue of law. This is a contract. It should be interpreted de novo, which it was conceded in the briefing. And it should be construed as it was written, not as they might wish it had been. And this one, the consent order couldn't exceed the mandate under Section 337, as Judge Serrano in the colloquy with both counsels. But the problem I'm having with that is I'm thinking you can never have a consent order that weighs the challenge to validity without then litigating the validity issue in the enforcement. Because under 1337A, the patent provision, they can't actually issue a non-consent order without finding infringement of a valid patent. So it can't be that every enforcement proceeding of a consent order that gives up on validity has to litigate validity. But it's not litigating validity. As it happens, it's simply enforcing the terms that say, and they say you have to show infringement of a patent. You go back and you go, what's our infringement? The answer to this one, which comes out of the district court, which is final. When we get to a final decision there, which is a much better case. But with respect to the ITC, didn't you give up the right to pursue the issue of validity? Only in front of any proceeding to enforce the consent order. That is, in any administrative or judicial proceeding to enforce it. It wasn't that you couldn't do it elsewhere. And indeed, this court has made clear that you can have parallel proceedings. But the ITC did do an infringement determination in the enforcement proceeding, and they concluded that you infringed and they awarded $6 million of civil penalty. And setting aside, because obviously we have 60-page briefs that talks about why they're wrong on about 10 different grounds. But they did so under the premise that it has to be infringed of a valid patent. And that determination was still open, because this case is still open as we sit here today. And once you have a final judicial determination that the patent is invalid, that means there's no way under either reading of the majority or the dissent in common that you can infringe that patent. That patent goes poof, and there is nothing left to happen in that regard. Okay, well, I think we need to bring this to a close, Mr. Brand. Thank you very much. Let's move on to the next.